FILED
2006 Nov-29 AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-06-S-4754-NW** |
| ) | |
| **THOMAS E. RICHARDSON, d/b/a** ) | |
| **MID-SOUTH DISTRIBUTORS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

This action is before the court on an application for a Temporary Restraining Order or Preliminary Injunction, filed by the Federal Trade Commission ("FTC").[1] In its complaint, the FTC alleges that defendant Thomas E. Richardson operates a business known as Mid-South Distributors, which deals in greeting cards and business ventures related to greeting cards.[2] Specifically, according to the FTC, defendant

> has engaged in a course of conduct to advertise, promote, offer to sell, and sell to consumers greeting card business opportunity ventures for substantial sums of money. These business ventures involve the placement and maintenance of display racks of greeting cards in retail

---

[1] Doc. no. 2 (Motion for Temporary Restraining Order and Other Equitable Relief).

[2] Doc. no. 1 (Complaint), ¶¶ 5-6.

locations, where members of the public can purchase them.[3]

The gist of the alleged operation is that defendant advertises franchise opportunities to the public in newspapers throughout this region, representing that those who are willing to make a minimum up-front investment can reap profits of as high as $65,000 per year from the sale of greeting cards in local stores.[4] In truth, the FTC claims that most members of the public make no where near this much money, and are not given franchise disclosure documents, advertising disclosures, or earnings claim dossiers, as required by the FTC's Franchise Rule, 16 C.F.R. § 436.[5] Moreover, the FTC asserts that defendant's misrepresentations as to profits are violative of the "unfair or deceptive acts" provision of the Federal Trade Commission Act, 15 U.S.C § 45(a), which it has authority to enforce.[6]

## I. RELIEF SOUGHT

At this stage, the FTC seeks an order accomplishing substantially the following:

(1) Enjoining defendant from making any false or misleading statements or representations of material fact, which would violate 15 U.S.C. § 45(a);

(2) Enjoining defendant from violating any provisions of the Franchise

---

[3] *Id.* at ¶ 7.
[4] *Id.* at ¶¶ 8-12.
[5] *E.g.*, *id.* at ¶¶ 15, 16, 19, 22, 23.
[6] *Id.* at ¶ 17.

>        Rule, 16 C.F.R. § 436, including: failing to provide complete disclosure documents, making unsupported earnings claims to prospective franchisees, and making generally disseminated earnings claims without required disclosures;

(3)     Freezing defendant's existing and future assets, except insofar as those assets are needed to fund ordinary and necessary living expenses and the Commissioner approves any such disbursement;

(4)     Directing any third-parties who are in possession of defendant's assets and are provided notice of the order to hold such assets until further order of the court, and to provide an accounting of the assets to the FTC;

(5)     Requiring defendant to repatriate all assets and documents currently in foreign countries;

(6)     Prohibiting defendant from destroying any information relating to the business practices or personal finances of the defendant from June 2004 to the present;

(7)     Permitting the FTC to obtain credit reports concerning defendant;

(8)     Requiring defendant to provide a full accounting of personal financial information via an attached form, and to provide detailed customer sales information; and,

(9)     Directing service of the order on various parties.

The relevant authorities indicate that the court has the power to enjoin the activities listed above, and to freeze assets in the manner requested. *See* 15 U.S.C. § 53(b); *F.T.C. v. U.S. Oil & Gas Board*, 748 F.2d 1431, 1434 (11th Cir. 1984) ("Congress did not limit the court's powers under the final proviso of § [53(b)] and as a result this Court's inherent equitable powers may be employed to issue a

preliminary injunction, including a freeze of assets, during the pendency of an action for permanent injunctive relief.") (quoting the district court with approval); *F.T.C. v. National Prize Information Group*, No. 2:06-CV-01305-RCJ-PAL, 2006 WL 3234360, at * 5 (D. Nev., Nov. 2, 2006) ("In an FTC Section 13(b) [15 U.S.C. § 53(b)] injunction action, the Court has the inherent equitable power to grant all temporary and preliminary relief necessary to effectuate final relief, including a TRO, an asset freeze (including a freeze on individual assets), expedited discovery, a preliminary injunction, and other necessary remedies."). For the reasons set forth below, the court will enter a preliminary injunction substantially in compliance with the requests for relief outlined above.[7]

## II. DISCUSSION OF LAW

**A.     Standards for Statutory Injunctive Relief**

Generally, there are four elements that must be considered in determining whether to grant temporary or preliminary injunctive relief: (1) the likelihood that the movant will prevail on the merits; (2) whether the movant will suffer irreparable harm in the absence of such extraordinary relief; (3) the balance of the hardships between the movant and the non-movant; and (4) the interest of the public at large. *See*, *e.g.*,

---

[7] The court's order will be in the form of a preliminary injunction, rather than a temporary restraining order, because defendant has been notified of the request, and has in fact appeared before the court and consented.

*Charles H. Wesley Education Foundation, Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005); *see generally* 11A Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2d* § 2948, at 131-33 (2d ed. 1995). When confronted with a petition for injunctive relief based upon a federal statute, however, courts usually hold that the irreparable harm element is satisfied as a matter of law.

> Where an injunction is authorized by statute, it is proper to issue such an order to restrain violations of the law if the statutory conditions are satisfied. Furthermore, in such situations, the court is not bound by the principles that apply in private equity suits. *United States v. Diapulse Corporation of America*, 457 F.2d 25, 27-28 (2d Cir. 1972); *Mitchell v. DeMario Jewelry, Inc.*, 361 U.S. 288, 291 . . . (1960). Proof of irreparable harm from denial of an injunction, a traditional prerequisite for injunctive relief, need not be established where the government seeks by statutory injunction to protect the public health [and welfare] and effectuate Congressional policy, *Diapulse Corporation, supra*, 457 F.2d at 28, for the availability of the statutory power to enjoin violations of the statute is evidence of a Congressional judgment that such violations would cause irreparable injury. *Ibid.*; *see also United States v. Nutrition Service*, 227 F. Supp. 375, 388-389 (W.D. Pa. 1964) *aff'd* 347 F.2d 233 (3d Cir. 1965). Likewise, the government is not bound to prove the absence of an adequate remedy at law where a statute authorizes an injunction.

*United States v. Sene X Eleemosynary Corp.*, 479 F. Supp. 970, 981 (S.D. Fla. 1979) (some citations omitted). *See also National Prize Information Group*, 2006 WL 3234360, at * 6 (holding that "irreparable harm is presumed in a [FTC Act] statutory enforcement action"). *But see Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004) (noting, in *dicta*, that "several of our cases also suggest that, when

Congress authorizes injunctive relief, it implicitly requires that the traditional requirements for an injunction be met in addition to any elements explicitly specified in the statute").

In any event, in very similar cases, courts have found that violations of the same FTC Act provisions at issue here can cause irreparable injury. *See F.T.C. v. Jordan Ashley*, *Inc.*, No. 93-2257-CIV, 1994 WL 200775, at * 1 (S.D. Fla. April 5, 1994) (ordering temporary restraining order and asset freeze in greeting card franchise case involving facts almost identical to those currently before the court). Moreover, "[w]hen balancing the hardships of the public interest against a private interest under Section 13(b), the public interest, which includes economic effects for consumers and effective relief for the Commission, should receive greater weight." *National Prize Information Group*, 2006 WL 3234360, at * 6.

**B.     Likelihood of Prevailing on the Merits**

The pivotal issue for the entry of a preliminary injunction is whether the moving party, here the FTC, has shown that it is substantially likely to prevail on the merits of its claims. In this case, the FTC asserts both statutory and regulatory causes of action. The court will take up these causes of action in turn.

    **1.     *Unfair Competition* (15 U.S.C. § 45(a))**

Title 15, Section 45(a) of the United States Code provides that "[u]nfair

methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a). An act or practice is deceptive under that provision if it involves a material misrepresentation or omission that would likely mislead consumers, acting reasonably under the circumstances. *F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). "A representation or omission is material if of the kind usually relied on by a reasonably prudent person." *Jordan Ashley, Inc.*, 1994 WL 200775, at * 2.

Here, affidavits submitted along with the motion indicate that defendant routinely represented a profit potential of at least $2,500 per month, when in fact, the profits in many cases barely reached $300, and in others, the profits were nonexistent.[8]  Thus, as in *Jordan Ashley, Inc.*, 1994 WL 200775, defendant "misrepresented earnings potential of the distributorships; the sales volume likely to be achieved; the authenticity of references supplied . . . [and] [e]ach of these misrepresentations is material." *Id.* at * 2. Moreover, "[t]here is no question that these misrepresentations resulted in consumer injury," as the affidavits indicate that in many cases, consumers invested as much as $20,000.[9] *Id.* at * 3.

Generally, the elements just covered will establish *corporate* liability. *See* 15

---

[8] *See, e.g.*, doc. no. 2, Ex. 3, pp. 3-5; *id.* at Ex. 6, p. 5.

[9] *See, e.g.*, doc. no. 2, Ex. 3, pp. 5; *id.* at Ex. 6, p. 4; *id.* at Ex. 7, p. 4.

U.S.C. § 45(a)(2). Two additional questions must be answered in order for the FTC to establish a violation of § 45(a) by an *individual*: "[a]fter establishing corporate liability, the FTC must show that the individual (1) actively participated in the violative practices or (2) had authority to control the deceptive practices and had or should have had knowledge or awareness of the practices." *National Prize Information Group*, 2006 WL 3234360, at * 5. *See also Jordan Ashley*, *Inc.*, 1994 WL 200775, at * 3. Here, the same proof that suggests corporate liability suffices to indicate personal liability, because all of the affidavits reveal that the person making the majority of the misrepresentations was the defendant himself, Thomas E. Richardson. Hence, the FTC has demonstrated a substantial likelihood of success on the merits with respect to its statutory claim.

    **2.** *Franchise Rule Violations* **(16 C.F.R. § 436.1)**

The FTC also contends that defendant violated the Franchise Rule. As aptly summarized by another district court in this circuit,

> [t]he Franchise Rule requires a franchisor to provide prospective franchisees with a complete and accurate disclosure containing twenty categories of information about the history of the franchisor and the terms and conditions under which the franchise operates. *See* 16 C.F.R. § 436.1(a)(1)-(a)(20). The rule also requires the franchisor to have a reasonable basis for any oral, written, or visual representations made to a prospective franchisee concerning earnings or profits the franchisee should expect from the franchise; to provide the prospective franchisee with documents substantiating these representations; to disclose he

      material basis for these representations; and to include a warning that the representations constitute only an estimate, not a guarantee. *See id*. at §§ 436.1(b)(2), (c)(2), (e)(1), (e)(3)(4).

*Jordan Ashley*, *Inc.*, 1994 WL 200775, at * 3.

      A business venture is considered a "franchise" under the Franchise Rule if it is (1) a continuing commercial relationship; (2) whereby a person (franchisee) offers, sells, or distributes goods, commodities, or services which are supplied by another person; (3) the person selling the business secures for the franchisee locations or sites for rack displays or any other product sales display used by the franchisee in the offering, sale, or distribution of the goods; and (4) the franchisee is required to make a payment of greater than $500 to the franchisor. 16 C.F.R. §§ 436.2(a)(1)(ii) & (a)(2). *See also Jordan Ashley*, *Inc.*, 1994 WL 200775, at * 3-4. The evidence on file indicates that each of these elements is almost certainly met.

      Having concluded that the Franchise Rule is very likely applicable, it remains to be determined whether the FTC has established actual violations of the Franchise Rule. It appears from the affidavits and other evidence that defendant here failed to provide consumers with *any* disclosures whatsoever, clearly violating 16 C.F.R. § 436.1(a). The evidence recounted above suggests, likewise, that defendant violated 16 C.F.R. § 436.1(b) and (c), by making earnings claims without a reasonable basis, failing to disclose the basis for the claims, and failing to provide required documents.

Finally, a review of the advertisements on file shows that defendant neglected to include required information alongside "generally disseminated earnings claims," in violation of 16 C.F.R. § 436.1(e). The likelihood of success as to the Franchise Rule claims is, thus, substantial.

C.    **Irreparable Harm**

As discussed above, there is some confusion at the moment as to whether the FTC even needs to prove irreparable harm as a prerequisite to injunctive relief pursuant to a federal statute. *Compare National Prize Information Group*, 2006 WL 3234360, at * 6 (holding that "irreparable harm is presumed in a statutory enforcement action"); *with Klay*, 376 F.3d at 1098 (expressing some doubt as to whether the irreparable harm element is dispensed with in such contexts, but not reaching the issue). In either case, it appears that the conduct in question will continue if the court does not intervene, and many other citizens may be harmed thereby. Specifically, it is of concern that consumers are continually being solicited to invest tens of thousands of dollars in an enterprise that is of questionable solvency, and with a person that is of debatable trustworthiness. The danger of asset dissipation prior to a judgment requiring restitution is also significant. Thus, this factor — if it is a factor — is met. *See, e.g.*, *Jordan Ashley, Inc.*, 1994 WL 200775, at * 1.

D.    **Balance of the Hardships**

The balance of hardships is a weighty consideration when contemplating a total asset freeze, including personal assets. Regardless, courts in the past have found such action absolutely necessary to preserve the FTC's ability to obtain a full remedy. Indeed, as the court on *National Prize Information Group* observed,

> [a] court may impose an asset freeze based on the mere *possibility* of dissipation of assets. That possibility is present where, as here, defendants have engaged in pervasive fraudulent activity. Without an asset freeze, it is unlikely that funds will be available to satisfy any final order granting restitution to defrauded consumers.

2006 WL 3234360, at * 7. This is a reasonable resolution of the hardships, especially in light of the fact that the FTC has made provision in its proposed order for release of sufficient personal funds as are necessary for living expenses. The releases will merely be subject to approval by the FTC itself, or the court.

**E.    Public Interest**

The final factor easily weighs in favor of granting the motion. "When balancing the hardships of the public interest against a private interest [in FTC Act enforcement actions], the public interest, which includes economic effects for consumers and effective relief for the Commission, should receive greater weight." *Id*. at * 6. Primarily this is because of the likelihood of future violations where there has been a showing of a pattern of illegal activity. *See*, *e.g.*, *Commodity Futures Trading Commission v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979); *Sene X*

*Eleemosynary Corp.*, 479 F. Supp. at 981 ("The requirements for injunctive relief are met when the government establishes that defendants have violated the statute and there exists "'some cognizable danger of recurrent violation. . . .'") (quoting *United States v. W.T. Grant*, 345 U.S. 629, 633 (1953)).  It seems clear on these facts that future violations are a real concern, not to mention the possibility of asset spindown and secretion prior to the ultimate resolution of this case.  The loss of assets would undercut the possibility of restitution, while the failure to enjoin the allegedly illegal activities would permit defendant to continue soliciting payments from unsuspecting consumers.

### III. CONCLUSION

For the reasons stated above, the motion for preliminary injunctive relief is due to be granted.  An appropriate order will be entered contemporaneously herewith.

DONE this 28th day of November, 2006.

_____
United States District Judge